# UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

_____

UNITED STATES OF AMERICA,

    Plaintiff,

v.                                                        Case No. 20-20009

ANTHONY CHARLES SHOWERS,

    Defendant.

_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO SUPPRESS

Four Detroit Police Officers and a Michigan Department of Corrections ("MDOC") agent entered Defendant Anthony Charles Showers' residence on December 3, 2019 and discovered an unregistered short-barrel shotgun. As a result, Defendant was arrested for unpermitted possession of an unregistered firearm under 26 U.S.C. § 5861(d). (ECF No. 13.)

Defendant moves to suppress any evidence obtained from the search of his residence and requests an evidentiary hearing. (ECF No. 21.) The government has filed a response. (ECF No. 24.) Defendant has not replied. The court finds a hearing unnecessary, and for the reasons provided below, Defendant's motion will be denied. E.D. Mich. L.R. 7.1(f)(2).

## I. BACKGROUND

On November 5, 2018, Defendant was placed on five years of probation by the State of Michigan for crimes including carrying a concealed weapon. (ECF No. 24-3, PageID.86 (Order of Probation).) As part of his probation, Defendant acknowledged and

agreed to warrantless searches of his residence and property if there existed "reasonable cause to believe [Defendant] [had] items which violate the conditions of [Defendant's] probation." (ECF No. 24-5, PageID.91 (MDOC Offender Supervision Summary Report).) Defendant's order of probation included a prohibition on Defendant possessing weapons. (ECF No. 24-3, PageID.86 ("NO WEAPONS").) The order also stated that Defendant "must commit to condition 4.24," which set out the parameters of the government's right to conduct a probationary search without a warrant. (*Id.*; ECF No. 24-5, PageID.91 ("Special Conditions . . . 4.24.").)

Defendant signed a Probation/Parole Orientation Guide. In doing so, Defendant affirmed that he had "[r]eviewed the order [of probation]," "[d]iscussed standard and special conditions" that attach to his probation, and reviewed the "Weapons/Zero Tolerance Policy." (ECF No. 24-4, PageID.87, 89.) Defendant further affirmed that he had "[r]eviewed possible consequences of non-compliance." (*Id.*) Defendant's Offender Supervision Summary Report contained Condition 4.24 regarding warrantless searches. (ECF No. 24-5, PageID.91.)

On December 3, 2019, one MDOC agent and four Detroit Police Officers arrived at Defendant's residence to conduct a "compliance search." (ECF No. 24-7, PageID.94 (MDOC Case Report); *see also* ECF No. 24-8, PageID.95 (Case Supplemental Report from the Detroit Police Department).) The MDOC agent informed Defendant that they were relying on Condition 4.24 to conduct the search. (ECF No. 24-7, PageID.94.) The State officials asked to be directed to Defendant's room. (*Id.*) Defendant accompanied the MDOC agent and two police officers to a bedroom in the house. (*Id.*) Inside the

room, "[a]t the corner of the bed, near the pillows, was a sawed off shotgun, with one round loaded." (*Id.*)

## II. STANDARD

The Fourth Amendment of the United States Constitution guarantees "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." The purpose of the Fourth Amendment is "to safeguard the privacy and security of individuals against arbitrary invasions by governmental officials." *Taylor v. City of Saginaw*, 922 F.3d 328, 332 (6th Cir. 2019) (quoting *Camara v. Mun. Court of San Francisco*, 387 U.S. 523, 528 (1967)). In order to determine whether a violation of the amendment has occurred, courts consider: "first, whether the alleged government conduct constitutes a search . . . and second, whether the search was reasonable." *Id.*

The Fourth Amendment "contains no provision expressly precluding the use of evidence obtained in violation of its commands." *Herring v. United States*, 555 U.S. 135, 139 (2009) (quoting *Arizona v. Evans*, 514 U.S. 1, 10 (1995)). Over the course of many years, the Supreme Court developed the "exclusionary rule," which "forbids the use of improperly obtained evidence at trial." *Id.* The rule is "designed to safeguard Fourth Amendment rights generally through its deterrent effect" and is not a "necessary consequence of a Fourth Amendment violation." *Id.* at 139-40, 141 (quoting *United States v. Calandra*, 414 U.S. 338, 348 (1974)); *Davis v. United States*, 564 U.S. 229, 236-37 (2011) (citations removed) ("Exclusion is not a personal constitutional right, nor is it designed to redress the injury occasioned by an unconstitutional search. The rule's sole purpose . . . is to deter future Fourth Amendment violations.").

The exclusionary rule serves to "prohibit[] introduction into evidence materials seized during an unlawful search, and of testimony concerning knowledge acquired during an unlawful search." *United States v. Howard*, 621 F.3d 433, 451 (6th Cir. 2010) (quoting *Murray v. United States*, 487 U.S. 533, 536-37 (1988)). It also prohibits "the introduction of derivative evidence, both tangible and testimonial, that is the product of the primary evidence, or that is otherwise acquired as an indirect result of the unlawful search, up to the point at which the connection with the unlawful search becomes so attenuated as to dissipate the taint." *Id.*

In deciding whether evidence was obtained improperly through an illegal search, "the court may rely on hearsay and other evidence, even though that evidence would not be admissible at trial." *United States v. Raddatz*, 447 U.S. 667, 679 (1980); Fed. R. Civ. P. 104(a) ("The court must decide any preliminary question about whether . . . evidence is admissible. In so deciding, the court is not bound by evidence rules, except those on privilege.").

### III. DISCUSSION

#### A. Defendant's Request for an Evidentiary Hearing

Defendant includes in his motion a request for an evidentiary hearing. (ECF No. 21, PageID.59.) For motions to suppress, the court must hold an evidentiary hearing "if the motion is sufficiently definite, specific, detailed, and non-conjectural to enable the court to conclude that contested issues of fact going to the validity of the search are in question." *United States v. Ickes*, 922 F.3d 708, 710 (6th Cir. 2019) (quoting *United States v. Abboud*, 438 F.3d 554, 577 (6th Cir. 2006)); *United States v. Schumacher*, 611 Fed. App'x 337, 341 (6th Cir. 2015) (citations removed) ("[T]o mandate an

evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine."); *United States v. Thompson*, 16 Fed. App'x 340, 344 (6th Cir. 2001) ("A district court is required to hold an evidentiary hearing when the defendant has set forth contested issues of fact that bear upon the legality of the search."). If the questions presented are "entirely legal in nature" the court may decide the motion without a hearing. *Ickes*, 922 F.3d at 710. Further, even if there are contested facts, "a district court can forgo conducting an evidentiary hearing if sufficient content remains to support a finding of [constitutionality] after the contested items are set aside." *Thompson*, 16 Fed. App'x at 344.

Here, there are no material factual issues in dispute. *Ickes*, 922 F.3d at 710. Although Defendant and the government vary in their conclusions, both parties rely on the same facts. There are no disputes or disagreements as to the existence of Defendant's parole conditions, Defendant's connection to prior shootings (albeit as a target), Defendant's prior gun possession offenses,[1] or the presence of an MDOC agent and Detroit Police at Defendant's residence during the search. All the factual predicates that underlie the central disputes in this case, i.e., whether the search complied with Defendant's probation conditions and whether the search was supported by reasonable suspicion, are accepted by the parties. The issues contested by the parties are not factual, but "entirely legal in nature" and do not require an evidentiary hearing to resolve. *Id.*

---

[1] Shootings and Defendant's gun possession prior to the search are central to determining whether the search of Defendant's residence was legally justified. For a more detailed description of these facts and their relevance to the court's Fourth Amendment analysis, see *infra* Section II.B.

### B. Defendant's Motion to Suppress

Defendant moves to supress evidence obtained in the search of his residence, specifically an eleven-inch sawed-off shotgun. The government does not contest the fact that State officials had no valid warrant preceding the search. Instead, the dispute centers on the application of the probationary search exception to the general warrant requirement. The court finds the exception to have been met in this case and the search to have been reasonable under the Fourth Amendment.

"[S]earches conducted outside the judicial process, without prior approval by judge or magistrate, are per se unreasonable under the Fourth Amendment—subject only to a few specially established and well-delineated exceptions." *Katz v. United States*, 389 U.S. 347, 357 (1967); *City of Los Angeles v. Patel*, 135 S.Ct. 2443, 2446 (2015). Exceptions to the warrant requirement include the search of an individual on probation. The exception was first crafted by the Supreme Court in the case *Griffin v. Wisconsin*, 483 U.S. 868 (1987). In that case, the Court found that a state policy allowing searches of probationers upon a finding of "reasonable grounds" satisfied the Fourth Amendment. *Id.* So long as a warrantless search is carried out "pursuant to a regulation that itself satisfies the Fourth Amendment reasonableness requirement under well-established principles," it is consistent with the Constitution, and evidence obtained thereby is properly admitted. *Id.* at 873.

The Sixth Circuit has established a two-part inquiry to determine the applicability of a *Griffin* probationary search. "First, [the court] examine[s] whether the relevant regulation or statute pursuant to which the search was conducted satisfies the Fourth Amendment reasonableness requirement." *United States v. Henry*, 429 F.3d 603, 608

(6th Cir. 2005) (quoting *United States v. Loney*, 331 F.3d 516, 520 (6th Cir. 2003)); *United States v. Tessier*, 814 F.3d 432, 433 (6th Cir. 2016). A policy survives this prong "if it authorizes searches of parolees based on a reasonable suspicion that an individual is violating the terms or conditions of parole." *Loney*, 331 F.3d at 520-21; *United States v. Herndon*, 501 F.3d 683, 689 (6th Cir. 2007). Second, the court "analyze[s] whether the facts of the search itself satisfy the regulation or statute at issue." *Henry*, 429 F.3d at 608; *Tessier*, 814 F.3d at 433.

Here, the policy used to conduct the search of Defendant's residence satisfies the Fourth Amendment. *Henry*, 429 F.3d at 608. Defendant's probation condition number 4.24, upon which State officials relied to conduct the search, allows warrantless searches "so long as there is reasonable cause to believe [Defendant] [has] items which violate the conditions of [Defendant's] probation." (ECF No. 24-5, PageID.91.) The Supreme Court upheld a similar provision in *Griffin*, which permitted search if there were "reasonable grounds to believe the presence of contraband—including any item that probationer cannot possess under the probation conditions." 483 U.S. at 871. In the Sixth Circuit's *Loney* decision, the court found constitutional a state statute allowing warrantless searches when "a supervising parole officer has reasonable grounds to believe, among other reasons, that the parolee is not complying with the terms and conditions of parole." 331 F.3d at 521. Condition 4.24 is almost identical.

Further, in *United States v. Knights*, 534 U.S. 112 (2001), the Supreme Court upheld a probation condition that allowed searches even "with or without a search warrant, warrant of arrest or reasonable cause," so long as the search itself was supported by reasonable suspicion. *Id.* (The Fourth Amendment "requires no more than

7

reasonable suspicion to conduct a search of this probationer's house."). Thus, even if Defendant's probation conditions afforded State officials more power than Condition 4.24 and permitted a search for any reason, evidence obtained could still be admitted. Defendant does not dispute the constitutionality and applicability of Condition 4.24. In fact, he relies on it to argue that the search "was not conducted pursuant to [Defendant's] conditions of probation." (ECF No. 21, PageID.58-59.)

The central dispute in this case is whether the search was conducted pursuant to reasonable suspicion, the second step of the court's analysis. *Henry*, 429 F.3d at 608; *Loney*, 331 F.3d at 520-21.

The court must first determine what standard it must use when applying Condition 4.24 and its "reasonable cause" requirement. (ECF No. 24-5, PageID.91.) As the Sixth Circuit described in *United States v. Payne*, 181 F.3d 781, 788 (6th Cir. 1999), the legality of a probationary search conducted under *Griffin* "would at a minimum require that a search . . . meet the federal standard of reasonable suspicion." The Sixth Circuit in *Loney* applied the reasonable suspicion standard to a state policy allowing probationary searches on "reasonable grounds," language tracking almost to a word the search condition at issue here. 331 F.3d at 522. (ECF No. 24-5, PageID.91.) Lastly, the Supreme Court has permitted probationary searches even without a "reasonableness" requirement in state policies so long as the search was conducted with reasonable suspicion. *Knights*, 534 U.S. 112. The parties themselves rely on the reasonable suspicion standard to analyze the application of Condition 4.24 and the court will do the same.

Having determined the applicable standard, the court must next ask what body of law is used to define "reasonable suspicion." The government cites Michigan state court cases to establish the meaning of "reasonable suspicion," likely due to the language used in caselaw establishing probationary search standards, specifically the requirement that the search "satisfy the regulation or statute at issue." *Henry*, 429 F.3d at 608. There is, in fact, little difference between Michigan and Federal law on the definition of reasonable suspicion. Michigan courts have interpreted its meaning largely according to federal precedent. *E.g.*, *People v. Champion*, 452 Mich. 92, 98 (1996) (citing *United States v. Sokolow*, 490 U.S. 1 (1989)) ("Reasonable suspicion entails something more than an inchoate or unparticularized suspicion or "hunch," but less than the level of suspicion required for probable cause."); *People v. Nelson*, 443 Mich. 626, 632 (1993) (setting the standard for "reasonable suspicion" *Terry* stops, relying on Supreme Court precedent). Furthermore, the Sixth Circuit has analyzed the constitutionality of *Griffin* probationary searches routinely under federal precedents for reasonable suspicion, not based on contradictory state law. *Henry*, 429 F.3d at 609-10 (citing *Payne*, 181 F.3d at 788, and *United States v. Cortez*, 449 U.S. 411, 417-18 (1981), in its definition of reasonable suspicion); *Loney*, 311 F.3d at 522 (citing *Payne*, 181 F.3d at 788, when analyzing whether the reasonable suspicion standard was met); *Payne*, 181 F.3d at 788 (quoting *Cortez*, 449 U.S. at 417-18, to define reasonable suspicion). Thus, the court will review the search at issue under the well-developed federal jurisprudence on reasonable suspicion, and will conclude that reasonable suspicion existed in this case.

"Reasonable suspicion is based on the totality of the circumstances and has been defined as requiring articulable reasons and a particularized and objective basis for suspecting the particular person of criminal activity." *Henry*, 429 F.3d at 609-10 (quoting *Payne*, 181 F.3d at 788); *United States v. Arvizu*, 534 U.S. 266, 273 (2002). Although the standard is not met upon a "mere hunch," "the likelihood of criminal activity need not rise to the level required for probable cause, and it falls considerably short of satisfying a preponderance of the evidence standard." *Arvizu*, 534 U.S. at 274 (citing *Sokolow*, 490 U.S. at 7).

Here, based on undisputed facts, the State officials had a specific, articulable reason, particularized to Defendant, for searching Defendant's residence.

First, on July 12, 2019, five months before the search, Defendant was shot and injured. (ECF No. 24-6, PageID.93.) Defendant reported he knew who the shooter was but "would not disclose who shot him." (*Id.*)

Second, on September 4, 2019 (three months before the search), Defendant was arrested with a firearm, which became the subject of its own investigation. (*Id.*)

Third, Defendant was again the target of a shooting on November 20, 2019, a mere two weeks before the search. (*Id.*) His residence was "shot up" multiple times, but Defendant declined yet again to assist investigators or to provide information, refusing to "disclose who shot the house, even though he states he knows who did it." (*Id.*)

This information is easily sufficient to allow an investigator to draw an inference that Defendant may again have acquired possession of a firearm to take care of the shootings without assistance from police. Defendant's original charge was in part for carrying a concealed weapon. (ECF No. 24-3, PageID.86.) With that background of

weapons charges and within a period of six months, Defendant: 1) was shot and had his house shot up multiple times (in one reported incident); 2) on both occasions refused to work with the police in ensuring his protection; and 3) was caught carrying a firearm, apparently in response to the shootings. (ECF No. 24-6, PageID.93.) With this evidence, Defendant was, or could have been, perceived by a probation officer as plausibly fearing for his safety and property, and likely in possession of a firearm.

As it turned out, during the search Defendant "blurted out that he had a gun because his house has been shot up." (ECF No. 24-8, PageID.95.) After-acquired information such as that statement cannot support in retrospect the existence of reasonable suspicion, but it may yet illustrate concisely the common-sense nature of an investigator's reaction to the series of shooting events that preceded the search here. *Ornelas v. United States*, 517 U.S. 690, 696 (1996) (emphasis added) (A determination of reasonable suspicion requires an inquiry into "the events which occurred *leading up to the stop or search*."); *Joshua v. DeWitt*, 341 F.3d 430, 443 (6th Cir. 2003) (emphasis added) ("In determining reasonable suspicion . . . a court must identify all of the relevant historical facts known to the officer *at the time of the stop and search*," not those made known to the officer after the search).

The government misinterprets *United States v. Swilley*, Case No. 18-20320, 2019 WL 108844, at *3 (E.D. Mich. Jan. 4, 2019), as supporting an argument that the investigator's reasonable suspicion here was "buttressed by the fact that a sawed off shotgun was found in [Defendant's] bedroom." *Id.* (ECF No. 24, PageID.74.) Nothing in *Swilley* says that suspicion—in that case of marijuana based on smell—was "buttressed by the fact that marijuana was later found at various locations in the probationer's

residence." *Swilley* pointed only to *pre*-search facts as supporting the officer's suspicion of the presence of marijuana. *Swilley*, 2019 WL 108844, at *3.

In all, it was plausible that a probation officer would conclude that Defendant might arm himself after he had been shot and wounded in July 2019. Indeed, Defendant was found with a concealed weapon in September 2019. With a second shooting having occurred thirteen days prior, State officials had an objective evidentiary basis, including Defendant's earlier behavior, for suspecting that he might again be in possession of a weapon. *Henry*, 429 F.3d at 609-10. Officials had far more than a "mere hunch" of illegal activity, and relied on an escalating recent history of gun violence and gun possession as a basis for their reasonable suspicion. *Arvizu*, 534 U.S. at 274. Based on the totality of the circumstances, factually uncontested by Defendant, the search satisfied *Griffin* and was reasonable under the Fourth Amendment. *Henry*, 429 F.3d at 609-10; *Griffin*, 483 U.S. 868.

Although not clearly stated, it appears that Defendant argues for the "stalking horse" exception to *Griffin* probationary searches. The theory arises from the Supreme Court's reasoning in *Griffin* that warrantless searches of probationers are constitutional in certain instances due to the "special needs" of the probation system, namely the need to ensure rehabilitation and to reduce recidivism. 483 U.S. at 875. As the logic goes, if the search is unrelated to the special needs of probation and is done solely to effectuate a police investigation, the search cannot be supported through *Griffin*. *United States v. Sweeney*, 891 F.3d 232, 236 (6th Cir. 2018) ("Because the exception to the warrant requirement is predicated on the special needs inherent in a system of probation, the search must be related to those needs and not merely an instance of law-enforcement

officers' using a parole officer as a stalking horse to assist in an unrelated investigation."). Thus, while "[a] probation officer need not have a warrant to conduct a search of a probationer where the probation officer is properly carrying out her official responsibilities" and "police officers and probation officers can work together and share information to achieve their objectives," "it is impermissible for a probation search to serve as a subterfuge for a criminal investigation." *United States v. Martin*, 25 F.3d 293, 296 (6th Cir. 1994); *Sweeney*, 891 F.3d at 236 ("[T]he stalking-horse exception only prevents probation officers from assisting law enforcement in evading the Fourth Amendment's warrant requirement.").

The Supreme Court has authorized probationary searches despite being outside *Griffin*'s "special needs" justifications; thus, it is not clear that the exception would prevent admission of the evidence in this case even if it applied. *E.g.*, *United States v. Payne*, 588 Fed. App'x 427, 432 (6th Cir. 2014) (citing *Knights*, 534 U.S. 112) ("[T]he stalking-horse argument has no application when, as here, a search may be justified under *Knights* totality-of-the-circumstances standard."). Nonetheless, the court does not find a stalking horse here. Defendant presents no evidence that Michigan's probation office used the search to disguise a police investigation, unrelated to the purposes of probation. In fact, Defendant presents no evidence at all beyond the MDOC case report. (ECF No. 21-1.) State officials had an articulable and valid reason for thinking Defendant may have been violating a fundamental part of his parole by possessing a firearm. (ECF No. 24-3, PageID.86 ("NO WEAPONS"); ECF No. 24-4, PageID.87 ("Weapons/Zero Tolerance Policy").) A probation agent participated in the search and helped to discover the weapon. (ECF No. 24-7, PageID.94.) Police officers certainly

13

provided assistance, but police presence is permitted and by itself does not trigger the stalking horsing exception. *Martin*, 25 F.3d at 296. In fact, it seems to this court entirely unreasonable for a single unaccompanied probation agent to approach a probationer suspected of possessing firearms and being involved in potentially deadly shootings. The search was conducted pursuant to the search powers of Michigan's probation services and furthered the interests of those services, i.e., to confirm whether Defendant was complying with his probation conditions. (ECF No. 24-7, PageID.94 (MDOC agent explaining to Defendant at the time of the search that it was being conducted pursuant to Condition 4.24).) Without any evidence of "subterfuge," deceit, or evasion of procedure, the stalking horse exception does not apply. *Sweeney*, 891 F.3d at 236; *Martin*, 25 F.3d at 296; *Subterfuge*, Webster's Third New International Dictionary (2020) ("[A] deceptive device or stratagem.").

Lastly, Defendant mentions that the MDOC agent present at the time of the search was not the Probation Officer assigned to Defendant. However, Defendant does not provide detailed arguments on the point and does not quote or cite to Condition 4.24's language or relevant caselaw. It is thus not apparent how this fact is relevant to the court's analysis. On the court's independent review, Condition 4.24, as presented to the court by the government, does not limit to Defendant's assigned Probation Officer the authority to conduct probationary searches. (ECF No. 24-5, PageID.91.) Although the condition states that a search can be conducted if "the field agent has reasonable cause," it does not state what position that agent must hold or cannot hold. (*Id.*) Without more, the court concludes the search was executed in accordance with Defendant's probation terms. The search of Defendant's residence was not inconsistent with

14

constitutional standards, and the evidence secured in the process is admissible. *Henry*, 429 F.3d at 608; *Howard*, 621 F.3d at 451.

## IV. CONCLUSION

Defendant was bound to a probation condition that permitted warrantless searches. On December 3, 2019, State officials had a particularized, articulable, and evidence-based reason to search Defendant's residence for firearms. The State officials met the legal requirements of reasonable suspicion and the search was not in violation of the Fourth Amendment to the Constitution.

Evidence of a firearm obtained at Defendant's house is admissible against Defendant at trial. Accordingly,

IT IS ORDERED that Defendant's "Motion to Suppress Evidence Seized" (ECF No. 21) is DENIED.

                                                                s/Robert H. Cleland              /
                                                                 ROBERT H. CLELAND
                                                                UNITED STATES DISTRICT JUDGE

Dated: April 1, 2020

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, April 1, 2020, by electronic and/or ordinary mail.

                                                                  s/Lisa Wagner                  /
                                                                Case Manager and Deputy Clerk
                                                                (810) 292-6522

S:\Cleland\Cleland\JUDGE'S DESK\C2 ORDERS\20-20009.SHOWERS.MotiontoSuppress.RMK.RHC.3.docx